**John E. DANNENBERG,**
Plaintiff–Appellee,

v.

**Julio VALADEZ, acting Warden of California Medical Facility, Vacaville; Jack Carlson, Facility Captain, Unit V; P. Mandeville, Lt., Unit V; James Gomez, individually and in his official capacity as an employee of the State of California, Department of Corrections; Pulsipher, Lt., individually and in his official capacity; Rowlette, Lt., individually and in his official capacity; Thomas Prebula, individually and in his official capacity, Defendants,**

and

**Carolyn P. Graham, A/W; Thomas Hartman, Lt., ISU; Bobby Houston, individually and in his official capacity; K.C. Mendonza, individually and in his official capacity, Defendants–Appellants.**

No. 02–16273.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 2003.

Filed Aug. 11, 2003.

---

**23.** 18 U.S.C. § 921(a)(33)(B)(i)(I).

Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Constance L. Picciano, Supervising Deputy Attorney General, Michael G. Lee, Supervising Deputy Attorney General, Sacramento, CA, for the defendant-appellants.

Ronald L. Melluish, Law Offices of Ronald L. Melluish, Elk Grove, CA, for the plaintiff-appellee.

Before HAWKINS, W. FLETCHER, Circuit Judges, and BREYER, District Judge.*

## OPINION

BREYER, District Judge:

In March 2000, a jury entered a verdict in favor of plaintiff-appellee John Dannen-berg, a California state prison inmate, against four prison officials for violating Dannenberg's constitutional rights by punishing him for engaging in protected activity while in prison. The jury awarded Dannenberg $9,000 in damages, and the district court subsequently entered an injunction ordering that certain materials be expunged from Dannenberg's prison record. The court then granted Dannenberg's motion for attorneys' fees incurred subsequent to enactment of the Prison Litigation Reform Act ("PLRA") in the amount of $57,566.25.

This appeal followed, challenging only the amount of the attorneys' fees award. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## BACKGROUND

While an inmate at the California Medical Facility State Prison ("CMF") in Vacaville, California in 1994 and 1995, appellee John Dannenberg assisted another inmate to litigate, successfully, a petition for a writ of mandate to restore the inmate's family visitation rights. Thirty-four days after securing the writ, Dannenberg was placed in administrative segregation and all of his legal papers confiscated on the basis of a report by a CDC Investigative Services lieutenant alleging that Dannenberg had improperly ingratiated himself to prison staff in order to win permission to work on the prison alarm system. Although the lieutenant later qualified that allegation, a prison committee recommended that Dannenberg be transferred to San Quentin, purportedly for reasons of institutional security.

* Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

In November 1995, Dannenberg filed an administrative appeal asserting that his lockup in administrative segregation was unjustified and in retaliation for assisting the other inmate to win back his family visitation rights. When the administrative appeal was denied, Dannenberg retained counsel and in January 1996 filed a section 1983 claim against a total of eleven prison officials.

Dannenberg was transferred to San Quentin on January 4, 1996.[1] Dannenberg claims that San Quentin was selected as the transfer site because inmates at San Quentin are not permitted to have word processors, such that Dannenberg would be unable to continue to provide legal assistance to other inmates.

In September 1996, Dannenberg filed an amended complaint alleging that the defendants impaired his access to the courts by placing him in administrative segregation and confiscating his legal materials, and that he was transferred to San Quentin in retaliation for the legal assistance he rendered to other inmates at CMF. He further alleged that the transfer had and would continue to result in inadequate care for his medical condition. Dannenberg's complaint contained a prayer for $500,000 in general damages, $500,000 in punitive damages, and an unspecified amount of special damages. Dannenberg also sought a court order directing that (1) he be returned to CMF; (2) his prison records be expunged of any references to the lockup that resulted from the lieutenant's report; (3) his job and gate pass be restored; and (4) he be permitted to retain his word processor, diskettes, legal papers, and books.

At a parole hearing in February 1997, Dannenberg was denied parole. The parole board recommended, by checking a box on a standard form, that Dannenberg become and remain "disciplinary-free." Dannenberg contends that the denial, as well as the reference to the need to become "disciplinary-free," are traceable to the time he spent in administrative segregation as a result of the lieutenant's report.

In March 1999, Dannenberg's claims for denial of medical care and access to the courts were decided against him by way of summary judgment.

Trial of Dannenberg's retaliation and equal protection claims began on February 22, 2000. On March 3, 2000, the jury returned a verdict against four defendants on the retaliation claim and awarded Dannenberg compensatory damages of $6,500 plus punitive damages of $2,500. On September 21, 2000, the trial court entered an injunction expunging materials related to the lieutenant's report from Dannenberg's record.

After soliciting additional briefing on the issue of attorneys' fees, the district court entered an order on May 14, 2002 granting Dannenberg's motion for attorneys' fees. The court found that all 511.7 hours of attorney time for which Dannenberg sought compensation "were directly and reasonably spent over four years between enactment of the PLRA and the conclusion of the trial in this matter in proving this violation of plaintiff's constitutional rights." The court thus awarded attorneys' fees at the statutory hourly rate, for a total fee award of $57,566.25.[2]

---

1. Dannenberg claims that the transfer was originally scheduled for January 8, 1996, and that defendants accelerated it without advance notice in an effort to moot a motion that Dannenberg filed on January 3 for a temporary restraining order to halt the transfer.

2. The court also awarded fees for 75.75 hours spent on the case prior to enactment of the

On June 14, 2002, appellants filed a notice of appeal limited to the issue of the fee award.

## STANDARD OF REVIEW

■ We review the district court's interpretation of the PLRA's provisions governing attorneys' fees de novo. *See Webb v. Ada County,* 285 F.3d 829, 834 (9th Cir. 2002); *Barrios v. California Interscholastic Fed'n,* 277 F.3d 1128, 1133(9th Cir. 2002) ("Any elements of legal analysis and statutory interpretation that figure in the district court's attorneys' fees decision are reviewed de novo."). The amount of the fee award is reviewed for abuse of discretion. *See Webb,* 285 F.3d at 834. "The district court has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, we defer to its determination, including its decision regarding the reasonableness of the hours claimed by the prevailing party." *Gates v. Deukmejian,* 987 F.2d 1392, 1398 (9th Cir. 1992).

## DISCUSSION

A.   Section 1997e(d)

■ In enacting the PLRA, "the government's interest was apparently to curtail frivolous prisoners' suits and to minimize the costs—which are borne by taxpayers—associated with those suits." *See Madrid v. Gomez,* 190 F.3d 990, 996(9th Cir.1999). Toward that end, the PLRA contains restrictions on the availability of attorneys' fees for inmate lawsuits. Specifically, 42 U.S.C. § 1997e(d) provides:

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and

(B) (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or

(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

(2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

The district court awarded Dannenberg attorneys' fees in the amount of $57,556.25. Appellants contend that this amount was excessive because section 1997e(d)(2) limits recoverable attorneys' fees to 150 percent of any monetary judgment. Since the jury awarded Dannenberg only $9,000 in damages, appellants believe that the fee award should have been no higher than $13,500.

The district court rejected appellants' position, holding that the 150–percent cap applies to cases in which the plaintiff obtains *only* monetary relief. Since Dannenberg also received injunctive relief in this case—to wit, an order that the lieutenant's report be expunged from his prison record—the court did not apply the cap.

This circuit has yet to consider whether section 1997e(d)(2) caps available fees when an inmate obtains injunctive relief in

PLRA. Those fees are not in dispute on appeal.

addition to monetary damages. Although three other circuits have spoken on this issue, their consideration has been confined to footnotes. In *Boivin v. Black,* 225 F.3d 36 (1st Cir.2000), the First Circuit, rejecting the argument that the fee cap is unconstitutional, noted that

> [i]n a case in which the court orders non-monetary redress (say, an injunction) along with a monetary judgment, the fee cap contained in section 1997e(d)(2) would not restrict the total amount of attorneys' fees that the court could award. In such a "hybrid" case, the court would be free to take into account all the provisions of section 1997e(d).

*Id.* at 41 n. 4. Citing to *Boivin,* the Sixth Circuit has similarly "caution[ed] that if non-monetary relief is obtained, either with or without money damages, § 1997e(d)(2) would not apply." *Walker v. Bain,* 257 F.3d 660, 667 n. 2 (6th Cir.2001). And the Eighth Circuit, citing to both *Boivin* and *Walker,* has noted the same. *See Foulk v. Charrier,* 262 F.3d 687, 703 n. 17 (8th Cir.2001) ("[I]f non-monetary relief is ordered (whether with or without a monetary award), the attorney's fees cap in 42 U.S.C. § 1997e(d)(2) does not apply.").

Although appellants do not cite to a single case that has adopted a contrary interpretation of the fees provision, they urge this Court to decline to follow the *Boivin* line of cases because those cases' interpretation of section 1997e(d)(2), in addition to being dicta, allegedly conflicts with the plain meaning of the statute. Specifically, appellants contend that because the relevant provision of the statute begins with the phrase "*whenever* a monetary judgment is awarded . . .," the statute envisages no exception for cases in which a monetary judgment is accompanied by some other form of relief.

Under appellants' interpretation, a prison inmate who obtains only slight monetary damages can recover commensurately limited attorneys' fees no matter how sweeping the injunctive relief he manages to secure. In the context of prison litigation, which frequently involves constitutional challenges to prison conditions or practices for which the desired relief is primarily nonmonetary, a rule that tethered attorneys' fees solely to monetary relief would be difficult to square with the rest of section 1997e(d). *See United States v. Fiorillo,* 186 F.3d 1136, 1153 (9th Cir.1999) (courts should interpret statutory provisions in a manner that renders them internally consistent). Whereas the statute provides for attorneys' fees in an amount "proportionately related to the court-ordered relief," 42 U.S.C. § 1997e(d)(1)(B)(i), appellants' interpretation of subsection (d) would require courts setting attorneys' fees to disregard completely a plaintiff's degree of injunctive success whenever the plaintiff also obtains money damages. Inmates would thus be forced to choose, at the outset of litigation, between seeking money damages—with the knowledge that success in that regard could significantly limit available attorneys' fees—or foregoing money damages to which they may legitimately be entitled in order to protect their right to seek full reimbursement for fees. Nothing in the text or history of the PLRA supports a rule that would impose such a Hobson's choice on prison inmates.

Rejecting appellants' interpretation of section 1997e(d) does not, as appellants suggest, read out the statute's "whenever" clause. To the contrary, the only construction of section 1997e(d) that is consistent with the statute's provision for attorneys' fees "proportionately related to the court ordered relief" is one that restricts application of the fee cap to the portion of total fees that was incurred solely in order to obtain money damages. Thus, "whenever a monetary judgment is awarded,"

subsection (d)(2) caps attorneys' fees incurred for the sole purpose of securing the monetary judgment. By contrast, fees incurred to obtain injunctive relief, whether or not monetary relief was also obtained as a result of those fees, are not limited by this provision. Construing the fee limitation this way frees district courts to "take into account all the provisions of section 1997e(d)," *Boivin,* 225 F.3d at 41 n. 4, enabling them to award fees in an amount proportional to the overall relief obtained while honoring the cap on fees incurred to obtain money damages.

Appellee in this case obtained injunctive relief in addition to money damages, and there has been no showing that any portion of the attorneys' fees was incurred for the sole purpose of obtaining monetary relief. Accordingly, we find no error in the district court's ruling that no portion of the fees was limited to 150 percent of money damages.

B. The Fee Calculation

Having found that section 1997e(d)(2)'s fee limitation did not apply in this case, the district court granted appellee's motion for attorneys' fees in its entirety. Appellants contend that the court erred by not reducing the fee award to reflect appellee's incomplete success on the merits.

■ " '[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). While it is the district court's responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case," *id.* at 115, 113 S.Ct. 566 (quoting *Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)), the court must exercise its discretion with an eye toward "the relationship between the

extent of success and the amount of the fee award." *Id.* at 115–16, 113 S.Ct. 566(quoting *Hensley,* 461 U.S. at 438, 103 S.Ct. 1933). When a plaintiff "achieve[s] only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 114, 113 S.Ct. 566(quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933).

■ Here, the district court awarded Dannenberg fees for all 511.7 hours that counsel expended on his case subsequent to enactment of the PLRA. According to Dannenberg, this number includes hours that counsel spent deposing numerous witnesses as well as preparing for and conducting a five-day jury trial. In the view of the district court, all of this time was "directly and reasonably" attributable to "proving this violation of plaintiff's constitutional rights."

It is undisputed, however, that Dannenberg did not prevail on all of his claims. Dannenberg's causes of action for denial of medical treatment and access to the courts were decided against him by way of summary judgment. On his claim for retaliation, Dannenberg prevailed against four defendants but was unsuccessful against four others. Moreover, Dannenberg obtained only a fraction of the damages he sought and only part of his desired injunctive relief.

The district court based its determination that Dannenberg was entitled to full fees on the fact that Dannenberg prevailed on his "principle [sic] contention." Be that as it may, unless Dannenberg's counsel expended *no* time pursuing the claims on which Dannenberg was unsuccessful, the district court's conclusion that all 511.7 hours were "directly and reasonably incurred in proving an actual violation of plaintiff's rights," 42 U.S.C. § 1197e(d)(1), cannot be correct. On the record before

the Court, therefore, it appears that the district court did not properly consider appellee's degree of success in arriving at a reasonable fee award.

Accordingly, the district court's order granting Dannenberg's motion for attorneys' fees is hereby vacated and the case remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.